1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JIMMY DON SMITH,                          No.  2:18-CV-0064-KJM-DMC-P

12                    Petitioner,

13        v.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

14   JOE LIZZARAGA,

15                    Respondent.

16

17             Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition

19   for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 22, and Petitioner's

20   traverse, ECF No. 24.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

                                    1

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Samantha Bumgardner testified she worked at the Alta Regional Center, which provided services for developmentally disabled people. For three years she had been the service coordinator for the victim, who had moderate mental retardation. The victim, with an IQ of between 50 and 75, could not make good choices and needed living assistance. The victim lived in her own apartment but had an independent living skills instructor who met with her weekly. Bumgardner saw her approximately every other month. The victim lived with her two young children, and had some support from family members as well.
>
> Margarita Torres testified she lived with the victim for about three or four weeks beginning in late May of 2014, along with her two children. When defendant came to the apartment, the victim told Torres to send him away and say she was not there. Defendant insisted that he could come in to use the shower, and ultimately--after he spoke to the victim--came in. He seemed to be under the influence of drugs, and he followed the victim around the apartment. When the victim went to the restroom, defendant tried to rub Torres's leg. He dropped a lubricant bottle on the floor; although he denied it was his. The victim said it was not hers.
>
> Torres testified that at some point after he had showered and dressed, defendant went into the bathroom while the victim was inside, and he was in there for about 10-15 minutes with her. Afterwards, while defendant was still in the apartment, the victim was "teary eyed" and said defendant had "touched her." Both women told him to leave, but he would not. When the victim fell asleep on a couch, defendant said " 'Well, if you don't want nothing to do with me, then I'll be here with your friend,' as in me; referring to me [i.e., Torres]. That's when he started rubbing my leg." Torres was scared. Defendant made a comment about sex, and the victim had said he wanted to have a "threesome." When defendant left, the lubricant was gone. Torres had told a detective that defendant had been acting " 'perverted' " and had been following the victim around the apartment.
>
> The victim testified she was 32 and lived in a two-bedroom apartment with her two boys, aged six and 11. She received help from others with her "money and stuff" as well as with paying bills, shopping, and groceries. For about two or three weeks, Torres and her children lived with the victim. During that time, defendant came by, and although the victim told Torres not to open the door, she did and defendant pushed himself in. Later she testified Torres told her defendant pushed his way in. The victim went into a closet because she did not want company, but

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

eventually had to use the bathroom. When she was finished, defendant pushed her back into the bathroom. He seemed drunk and he had a bottle of sex lubricant in his back pocket. He asked the victim to ask Torres to " 'have a threesome' " and the victim told Torres about this comment. After defendant came into the bathroom, he put his fingers into her vagina. He pushed her down, got her pants and underwear down, penetrated her with his penis and told her he ejaculated. It hurt.

The victim testified defendant had been her friend and would come by to eat, shower, and watch television. He had never attacked her before. She first told a friend about it, but not right away because she was scared, but she thought Torres must have heard what happened because she was screaming. She gave her bra to a peace officer, because defendant had damaged it trying to get it off of her. She later saw defendant rubbing Torres's legs on the couch, and Torres did not seem to like it.

Deputy Willy Kardatzke testified that on June 6, 2014, he went to the victim's residence to investigate a rape reported by her aunt. The victim said during the rape she cried out but Torres told her "to relax and shut up." The victim said defendant had fondled her breast, put his finger in her vagina, broke her bra, and forced his penis inside her. She had since washed all of her clothing, but she gave Kardatzke the bra, which was exhibit 1 at trial.

Anthony Myers--a reluctant and partly intoxicated witness-- testified defendant admitted having sex with the victim, but had said it was in his tent and part of a planned drug transaction, and Myers so informed a detective. This witness's equally intoxicated wife testified the victim told her that defendant had raped her, and the victim was mad about it.

Detective Mark Claar testified Myers told him he (Myers) had confronted defendant about the rape allegation and defendant told Myers the victim had come to his tent and offered him oral sex in exchange for drugs, which offer he had declined. When Claar interviewed the victim, who was "of lower intelligence," she told him that about three weeks previously, defendant came to her apartment and he seemed high. She told Claar details of defendant's visit to the apartment that were consistent with her previous statements: defendant had mentioned a threesome; she hid in a closet; he had some kind of lubricant; he broke her bra; he put his fingers in her vagina; and she yelled for help. She added that after defendant had sex with her, he stayed at the apartment and was "making moves" on Torres.

When Claar searched defendant's tent, he found a hypodermic needle. Defendant said he had last used drugs five days before. When Claar spoke with Torres, she told him defendant had been "acting pervy" and following the victim around the apartment. The victim had told Torres defendant had lubricant and wanted a threesome, and Torres told Claar that defendant had touched Torres's leg.

ECF No. 11-2, pgs. 2-5 (opinion of the California Court of Appeal on direct review).

/ / /

/ / /

/ / /

/ / /

3

1    **B.**      **Procedural History**

2           The state court recited the following procedural history through Petitioner's

3    conviction:

4           A jury found defendant Jimmy Don Smith guilty of forcible rape
     and forcible sexual penetration. (Pen. Code, §§ 261, subd. (a)(2), 289,
5    subd. (a)(1)A).) (footnote omitted). Defendant later admitted a strike
     allegation that also qualified as a prior serious felony (residential burglary,
6    § 459), and five separate prison term allegations, in exchange for dismissal
     of a sixth prison term allegation (§§ 667, subds. (a), (b)-(i), 667.5, subd.
7    (b), 1170.12, 1192.7, subd. (c)(18)). The trial court sentenced defendant to
     prison for 41 years, and defendant timely appealed.
8
     ECF No. 11-2, pgs. 1-2.
9

10    The Court of Appeal affirmed the conviction and sentence in an unpublished decision issued on

11    April 18, 2016.  See ECF No. 11-2.  The California Supreme Court denied further direct review

12    on June 29, 2016, without comment or citation.  See ECF No. 11-4.

13           Petitioner then filed a post-conviction petition for a writ of habeas corpus in the

14    Yuba County Superior Court on March 17, 2017.  See ECF No. 11-5.  The Superior Court denied

15    the petition in a decision issued on April 17, 2017.  See ECF No. 11-6.  On July 17, 2017,

16    Petitioner filed a habeas corpus petition in the California Court of Appeal.  See ECF No. 11-7.

17    The Court of Appeal denied the petition without comment or citation on August 3, 2017.  See

18    ECF No. 11-8.  Finally, Petitioner filed a habeas petition in the California Supreme Court on

19    August 21, 2017.  See ECF No. 11-9.  That petition was denied without comment or citation on

20    November 1, 2017.  See ECF No. 11-10.

21           Petitioner filed his federal habeas petition on January 11, 2018.  See ECF No. 1.

22    Respondent's moved to the dismiss the petition as time-barred on October 5, 2018.  See ECF No.

23    10.  That motion was denied on October 1, 2019.  See ECF No. 20 (District Judge order adopting

24    findings and recommendations).  Respondent filed his answer on November 21, 2019.  See ECF

25    No. 22.  Petitioner filed a traverse on April 30, 2020.  See ECF No. 24.

26    / / /

27    / / /

28    / / /

4

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding .

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006)

(citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

///

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

/ / /

/ / /

/ / /

## III.  DISCUSSION

Petitioner asserts the following claims:

| | | |
|---|---|---|
| Claim 1 | Petitioner's right to due process was violated when the trial court allowed testimony from Samantha Bumgardner. | |

Trial counsel was ineffective in this regard.

See ECF No. 1, pgs. 5-7.

| | | |
|---|---|---|
| Claim 2 | Petitioner's right to due process was violated when the trial court allowed evidence of his drug use. | |

Trial counsel was ineffective in this regard.

See id. at 7-8.

| | | |
|---|---|---|
| Claim 3 | The trial court erred in instructing the jury under CALCRIM No. 331. | |

See id. at 8-10.

| | | |
|---|---|---|
| Claim 4 | Trial counsel was ineffective for failing to request a statement of reasons for the imposition of consecutive sentences. | |

See id. at 10-12.

### A.    Evidentiary Issues

In his first and second claims, Petitioner argues the trial court erred with respect to two items admitted into evidence – testimony from Bumgardner and evidence of Petitioner's drug use.  See ECF No. 1, pgs. 5-8.  In claim 1, Petitioner contends: "Petitioner was deprived of his 5th and 14th Amendment rights to Due Process and a fair trial by the admission of Samantha Bumgardner's testimony."  Id. at 5.  Petitioner offers no argument or evidence in support of this claim.  In claim 2, Petitioner asserts:

> Petitioner's 5th and 14th Amendment rights to Due Process and a fair trial were violated by the admission of evidence of his drug use unrelated to the charged offenses. . . . Petitioner's drug use unrelated to the instant offense was inadmissible as irrelevant and prejudicial, and amounted to improper character evidence.  It was prejudice.
>
> Id. at 7.

Again, Petitioner offers no further argument or any evidence in support of this claim.

/ / /

/ / /

8

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).   In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict.  See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

       1.   Bumgardner's Testimony

In rejecting this claim, the California Court of Appeal held:

> Defense counsel moved in limine to exclude Bumgardner's testimony in part as irrelevant and highly prejudicial. The motion partly relied on preliminary hearing testimony by Bumgardner to the effect that the victim had two children and had moderate mental retardation. The defense claimed this evidence would generate undue sympathy for the

victim.

The People replied in part that the evidence would help the jury understand possible perception and communication difficulties the victim may have.

The trial court permitted Bumgardner to testify at trial, as outlined *ante*.

On appeal, defendant contends Bumgardner's testimony was unduly prejudicial, deprived him of due process, and also argues trial counsel did not effectively address it.

Here, the evidence was relevant (Evid. Code, § 210) to show the reasons why the victim allowed defendant to press into her apartment and abuse her, her delayed disclosure, and to explain her demeanor on the stand. It was not inflammatory in comparison with the victim's testimony about what defendant did to her, nor was it time consuming or confusing. (See Evid. Code, § 352.) In such circumstances, the trial court acted well within its discretion in denying the in limine motion, and nothing about the ensuing trial showed that that ruling proved prejudicial.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) Here there was no prejudice.

ECF No. 11-2, pgs. 5-6.

In his answer, Respondent argues the state court's determination was reasonable. See ECF No. 22, pg. 12. According to Respondent:

The victim's service coordinator, Samantha Bumgardner, testified about the victim's developmental and mental disabilities. (Ex. A at 2, 5.) Petitioner argues this testimony was wrongly admitted under state law, unduly prejudicing him and also violating his due process rights. (Pet. at 5.) To the extent Petitioner argues that the state court erred under state law, his claim cannot be relitigated here. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

To the extent Petitioner argues admission of the evidence violated due process, his claim fails. The Supreme Court has never clearly held that admission of "overtly prejudicial evidence" can violate due process. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. . . [I]t has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* Without "clearly established Federal law" on the issue, a state court's ruling on the admission of evidence cannot be an "unreasonable application" of that law. *Id.* Therefore, in this case the California Court of Appeal was not unreasonable in rejecting the challenge to the service

1    coordinator's testimony. Petitioner's evidentiary claim fails to earn him
     habeas relief.

2

3    ECF No. 22, pg. 13.

4          As the state court explained, testimony from the victim's service coordinator was

5    relevant to help the jury understand testimony from the victim, who is developmentally disabled.

6    Moreover, the evidence was not unduly prejudicial under California Evidence Code § 352.  And,

7    even if it was, Respondent is correct that there is no clearly established Supreme Court precedent

8    holding that such evidence violates fundamental due process.  See Holley, 568 F.3d at 1101.  The

9    Court finds the state court's determination is neither contrary to nor based on an unreasonable

10   application of clearly established law, primarily because there is none.

11         2.     Evidence of Petitioner's Drug Use

12         In rejecting this claim, the state court found it to be waived because an objection

13   was not preserved at the time of trial.  The Court of Appeal held:

14         Defendant contends the trial court erred in permitting the
           introduction of evidence that he was intoxicated at the time of the alleged
15         crime, evidence that a syringe was found in his tent, and the fact that he
           admitted drug use to Detective Claar.
16         Before trial, the People sought an order permitting--upon the
           showing of a proper foundation--the introduction of evidence defendant
17         was intoxicated and had admitted recent drug use, to corroborate other
           testimony about his demeanor that day. Defense counsel filed a written
18         statement of no objection. The victim and Torres testified defendant was
           intoxicated, though not necessarily on drugs, and Detective Claar testified
19         that some time after the alleged rape, he found a needle in defendant's tent
           and defendant said he had used some unspecified drug five days
20         previously. The defense lodged no objections to any of this testimony.
           Appellate counsel recognizes that the issues raised on appeal were
21         not preserved by timely objection in the trial court. . . .

22                                    * * *

23         Accordingly, the contention of error is not preserved.

24   ECF No. 11-2, pgs. 6-7.

25   The state court also addressed the merits of Petitioner's claim:

26         As for the evidence of defendant's intoxication at the time of the
           crime, an objection would have been futile because the evidence was
27         relevant to explain defendant's near-forcible entrance, refusal to leave, and
           "pervy" behavior. It was directly relevant to the circumstances
28         surrounding the commission of the crime. Further, part of the defense

                                      11

1    strategy was to suggest the victim had willingly traded drugs for sex with
2    the defendant in the past, and that certain witnesses lied to punish
     defendant for giving the victim drugs. Therefore, evidence that defendant
     used drugs at the time of the alleged offense, had a syringe in his tent, and
3    admitted drug usage to Detective Claar advanced part of the defense
     theory. Thus, trial counsel had a plausible tactical reason for not
4    objecting to the evidence about drugs. Where the record shows trial
     counsel's actions reflected reasonable tactical choices, defendant's claims
5    of ineffective assistance are unavailing on direct appeal. (See *People v.
     Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) Therefore the failure to
6    object forfeits the claim of evidentiary error in this appeal. (See Evid.
     Code, § 353, subd. (a) [an evidentiary objection must be timely and
7    specific]; *People v. Ramos* (1997) 15 Cal.4th 1133, 1171.)

8    ECF No. 11-2, pg. 6.

9    Respondent argues this claim is procedurally barred.  <u>See</u> ECF No. 22, pg. 14.

10   According to Respondent:

11        Initially, because Petitioner did not object to the evidence at trial
     he is procedurally barred from raising that claim on federal habeas. A
12   federal court may not review a state prisoner's habeas claim if it was
     previously rejected by a state court on a state-law ground that is
13   independent of the federal question and adequate to support it. *Coleman v.
     Thompson*, 501 U.S. 722, 750 (1991); *Beard v. Kindler*, 558 U.S. 53, 60-
14   62 (2009).
          Here, the state court expressly found that Petitioner's evidentiary
15   claim had been forfeited because he failed to object to the evidence at trial.
     (Ex. A at 6-7.) Forfeiture for failure to object is a state procedural bar that
16   is both independent of federal law and consistently applied by California
     courts. *Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011). The
17   forfeiture bar defaults federal review of a state prisoner's habeas claim.
     *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Paulino v. Castro*, 371
18   F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957
     (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995).
19   Therefore, Petitioner is procedurally barred from raising this evidentiary
     claim on federal habeas.
20
     ECF No. 22, pg. 15.
21

22   Respondent also notes that the state court addressed the merits of Petitioner's

23   claim of error based on admission of evidence of his drug use.  <u>See</u> ECF No. 22, pg. 14.

24   According to Respondent, the state court's alternative merits determination was reasonable.  <u>See</u>

25   <u>id.</u>  Respondent contends:

26        The California Court of Appeal did not unreasonably apply
     Supreme Court authority when rejecting Petitioner's claim. Petitioner
27   argued below that admitting evidence of Petitioner's intoxication and drug
     use around the time of the crime violated state law and was so prejudicial
28   it violated his due process rights. (Lodged Doc. Nos. 3 & 17.) The

1

2

3

> appellate court found that even if it ignored Petitioner's forfeiture of this issue, the claim was meritless because the evidence was relevant and admissible. In fact, Petitioner himself relied on this evidence as part of his defense. (Ex. A at 6-7.) In light of this, the state court concluded the evidence was no source of prejudicial error.
> The state court's determination of state law is binding on this Court, thus that part of his claim cannot be relitigated here. *Bradshaw*, 546 U.S. at 76. And the state court's conclusion that there was no prejudicial constitutional error could not have been objectively unreasonable. The Supreme Court has never clearly held that admission of "overtly prejudicial evidence" can violate due process. *Holley*, 568 F.3d at 1101. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* Because there is no clearly established Federal law that overly prejudicial evidence violates due process, the California court's rejection of Petitioner's contention here was not unreasonable.

4

5

6

7

8

9

10

ECF No. 22, pgs. 15-16.

11

While the Court agrees with Respondent that Petitioner defaulted this claim in

12

state court, the Court may nonetheless reach the merits because the state court did so.  As the state

13

court observed, Petitioner opened the door to the issue of his drug use by arguing that the victim

14

had traded sex for drugs in the past and that various witnesses had lied to punish Petitioner for

15

giving the victim drugs.  On this record, admission of evidence of Petitioner's drug use by the

16

prosecution did not result in a fundamentally unfair trial.  To the contrary, it would have been

17

prejudicial to the prosecution had the government <u>not</u> been allowed to explore the issue once

18

Petitioner opened the door.  This Court finds the state court's determination of this claim is

19

neither contrary to nor based on an unreasonable application of clearly established law.

20

**B.**     **<u>Jury Instructions</u>**

21

In claim 3, Petitioner argues the trial court erred in instructing the jury under

22

CALCRIM No. 331.  <u>See</u> ECF No. 1, pg. 8.  In claim 3, Petitioner asserts:

23

24

25

> It was prejudicial error to instruct the jury with CALCRIM 331 at it improperly bolstered M.R.'s credibility, violating petitioner's rights to a jury trial, confrontation, Due Process and the right to present a defense. Further, the evidence was insufficient to warrant the use of this instruction.  The proceeding below was prejudicial error.

26

<u>Id.</u>

27

Again, Petitioner offers no further argument or any evidence in support of this claim.

28

/ / /

13

1    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

2    transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

3    1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available

4    for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at

5    1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

6    F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

7    See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does

8    not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing

9    Engle v. Isaac, 456 U.S. 107, 119 (1982)).

10   However, a "claim of error based upon a right not specifically guaranteed by the

11   Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

12   infects the entire trial that the resulting conviction violates the defendant's right to due process."

13   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

14   Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

15   claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

16   miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

17   F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

18   In general, to warrant federal habeas relief, a challenged jury instruction "cannot

19   be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

20   process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317

21   (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

22   must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

23   conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

24   414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous

25   jury instruction "'in the context of the overall charge to the jury as a component of the entire trial

26   process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

27   1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

28   'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

14

way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ."  See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the case of an instruction which omits a necessary element, constitutional error has occurred.  See id.

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364 (1970).  Therefore, due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved.  See Francis, 471 U.S. at 314.  On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact.  See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979).  The ultimate test of the constitutionality of any presumption remains constant –  the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt.  See id. at 156 (citing In re Winship, 397 U.S. at 364).

In rejecting this claim, the California Court of Appeal held:

> Defendant contends the trial court erred in giving a pattern instruction regarding witnesses with developmental disabilities, because no substantial evidence supported the instruction, it improperly bolstered the victim's credibility, and it violated his federal constitutional rights. We disagree.
> CALCRIM No. 331, as given in this case, provides:

> "In evaluating the testimony of a person with a developmental disability, consider all of the factors surrounding that person's testimony, including his or her level of cognitive development. Even though a layperson with a developmental disability may perform differently as a witness because of his or

her level of cognitive development, that does not mean he or she is any more or less credible than another witness.

"You should not discount or distrust the testimony of a person with a developmental disability solely because he or she has such a disability."

This instruction was given directly after the pattern instruction on how to evaluate the credibility of any witness, CALCRIM No. 226.

Section 1127g requires the court to instruct the jury about a witness's cognitive impairment, upon request, and CALCRIM No. 331 tracks the language of the statute. As is evident by the text of the instruction, it does not push the jury to believe or disbelieve a given witness's testimony. It merely directs the jury to consider a witness's cognitive level in connection with all the other factors used to evaluate any witness's testimony.

The use of CALCRIM No. 331 was upheld in *People v. Catley* (2007) 148 Cal.App.4th 500, against claims that it undermined the People's burden of proof and violated due process. (*Id*. at pp. 506-508.) Defendant acknowledges this and similar holdings but urges us to disagree with them. We decline the invitation, and for the reasons stated by *Catley* we find no infirmity in the statute or the instruction.

Defendant's subsidiary argument, that no substantial evidence supported the instruction, also fails to persuade. The evidence shows the victim had a developmental disability, and although she was able to live in an apartment, she required regular help, and therefore was a dependent person. (Cf. *People v. Keeper* (2011) 192 Cal.App.4th 511, 521 [purpose of section 1127g was to apply the instruction when a person is "dependent on others for care"].) Accordingly, it was appropriate for the trial court to give this instruction.

ECF No. 11-2, pgs. 7-8.

In his answer, Respondent argues the state court's determination was reasonable. See ECF No. 22, pg. 17. According to Respondent:

Petitioner argues that the trial court should not have given this instruction to the jury because it violated due process. (Pet. at 8.) The state court determined the instruction was correctly given and did not violate Petitioner's constitutional rights.

An instruction can violate due process if it fails to require the State "prove every element of the offense . . . Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). To determine if an instruction is violative, "courts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts." *Carella v. California*, 491 U.S. 263, 265 (1989). For instance, an instruction creating a "presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition." *Sandstrom v. Montana*, 442 U.S. 510, 522 (1979). An

instruction mandating that the jury find an element after proof of a predicate fact would likewise violate the Due Process Clause. *Id.*

Petitioner's complaint that the instruction undermined the burden of proof is not born out by the instruction itself. Unlike *Sandstrom* or *Carella*, the instruction in this case created no presumption at all. It neither mandated that the jury find a fact or element true, nor permissively presumed any fact or element. The instruction did "not push the jury to believe or disbelieve a given witness's testimony. It merely direct[ed] the jury to consider a witness's cognitive level in connection with all the other factors used to evaluate any witness's testimony." (Ex. A at 7-8.) The instruction explicitly equalizes the credibility determination between a cognitively disabled witness and any other: "[a witness's] level of cognitive development . . . does not mean he or she is any more or less credible than another witness." (Lodged Doc. No. 11 at 193.) Other federal courts have considered this question and found no constitutional infirmity in this instruction. *Menjivar v. Cash*, No. CV 10-8049-DOC OP, 2011 WL 4352477, at *12 (C.D. Cal. July 22, 2011) (finding this instruction "does not instruct the jury to give a witness with a cognitive impairment any more or less weight than any other witness. Rather, it merely instructs the jury. . . not to discount a witness' testimony solely because they are impaired, and to consider all the factors surrounding that person's testimony, including their level of cognitive development."). A fairminded jurist could agree that this instruction did not change the burden of proof.

Further, the question of whether an instruction of this kind offends due process has never been "squarely addresse[d]" by a decision of the Supreme Court. *Wright v. Van Patten*, 552 U.S. 120, 125 (2008). Because no Supreme Court case gives a "clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law."'" *Id.* at 126 (quoting *Carey v. Musladin*, 549 U.S. 70, 74 (2006)).

Petitioner does not show the state court decision violated or unreasonably applied clearly established Supreme Court precedent. The state court's rejection of the constitutional claim was reasonable. Petitioner cannot earn habeas relief.

ECF No. 22, pgs. 18-19.

CALCRIM No. 331 is a pattern California jury instruction telling the jury not to discredit the testimony of someone with a developmental disability simply because they have such a disability. The instruction also allows the jury to consider the disability in evaluating the developmentally disabled witness' credibility. As the state court observed, CALCRIM No. 331 does not push the jury to either believe or disbelieve the testimony of a witness with developmental disabilities. Further, the instruction does nothing to diminish the prosecution's burden of proof. Finally, Petitioner's argument that the evidence was insufficient to give the instruction is meritless because, as the state court also observed, the victim was in fact developmentally disabled, as established by testimony from Ms. Bumgardner, the victim's

1    services coordinator.

2              To warrant federal habeas relief, a challenged jury instruction cannot simply be

3    erroneous.  See Prantil, 843 F.3d at 317.  As with claims of erroneous evidentiary rulings, to

4    prevail the petitioner must show that a jury instruction so infected the trial as to render the result

5    fundamentally unfair.  See Estelle, 502 U.S. at 72.  Petitioner has not done so here.  To the

6    contrary, it was entirely fair to instruct the jury under CALCRIM No. 331 given that the victim,

7    who is developmentally disabled, testified.  The absence of such an instruction would have been

8    unfair to both the victim and the prosecution.  This Court cannot say that the state court's

9    determination is either contrary to or based on an unreasonable application of clearly established

10   law, to the extent such law even exists on the issue of CALCRIM No. 331 or any similar

11   instruction.

12              **C.      Ineffective Assistance of Counsel**

13              In claim 1, Petitioner argues trial counsel was ineffective for failing to object to

14   testimony from Samantha Bumgardner.  See ECF No. 1, pgs. 5-7.  In claim 2, Petitioner contends

15   trial counsel was ineffective for failing to object to evidence of Petitioner's drug use.  See id. at 7-

16   8.  In claim 4, Petitioner argues trial counsel was ineffective for failing to request a statement of

17   reasons for the imposition of consecutive sentences.  See id. at 10-12.  As with Petitioner's other

18   claims, he offers no argument or evidence in support of any of ineffective assistance of counsel

19   claims.

20              The Sixth Amendment guarantees the effective assistance of counsel.  The United

21   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

22   Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all

23   the circumstances, counsel's performance fell below an objective standard of reasonableness.  See

24   id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have

25   been the result of reasonable professional judgment.  See id. at 690.  The federal court must then

26   determine whether, in light of all the circumstances, the identified acts or omissions were outside

27   the wide range of professional competent assistance.  See id.  In making this determination,

28   however, there is a strong presumption "that counsel's conduct was within the wide range of

1  reasonable assistance, and that he exercised acceptable professional judgment in all significant

2  decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S.

3  at 689).

4  Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S.

5  at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's

6  unprofessional errors, the result of the proceeding would have been different." Id. at 694. A

7  reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.;

8  see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not

9  determine whether counsel's performance was deficient before examining the prejudice suffered

10  by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

11  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

12  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

13  697).

14  1.  Failure to Object to Bumgardner Testimony

15  The Court of Appeal addressed this aspect of claim 1 on direct review as follows:

16  To the extent defendant recasts his contention as a federal due
   process claim, and goes so far as to fault trial counsel for not making an
17  explicit federal objection, "when evidence is properly admitted under the
   Evidence Code, there is no violation of due process." (*People v. Johnson*
18  (2015) 61 Cal.4th 734, 763; see *People v. Kelly* (2007) 42 Cal.4th 763,
   787; *People v. Partida* (2005) 37 Cal.4th 428, 439.) Accordingly,
19  defendant's federal claims of error are not persuasive.

20  ECF No. 11-2, pg. 6.

21  As discussed above in the context of Petitioner's claim that admission of the

22  Bumgardner testimony violated due process, the state court determined – and this Court agrees –

23  that there was no basis upon which to object to the evidence. For this reason, trial counsel's

24  performance in failing to raise an objection did not result in in a lack of effective assistance.

25  Because Petitioner cannot prevail on the first prong of Strickland, his claim fails. The state

26  court's determination is neither contrary to nor based on an unreasonable application of

27  Strickland.

28  / / /

19

### 2.    Failure to Object to Evidence of Drug Use

The state court denied Petitioner's related evidentiary claim as both defaulted and failing on the merits.  See ECF No. 1-2, pgs. 6-7.  The state court also addressed the ineffective assistance of counsel aspect of the claim, concluding "trial counsel had a plausible tactical reason for not objecting to the evidence about drugs."  Id. at 7.  This Court cannot fault the state court's analysis.  As explained above, Petitioner contended he and victim had traded sex for drugs in the past, and that witnesses had lied because Petitioner gave the victim drugs.  Thus, trial counsel had a legitimate tactical reason to allow evidence of Petitioner's drug use.  Because Petitioner cannot establish the first Strickland prong of deficient performance by trial counsel, his ineffective assistance of counsel claim fails.  The state court's determination is neither contrary to nor based on an unreasonable application of Strickland.

### 3.    Failure to Request a Sentencing Statement

As to Petitioner's claim that trial counsel was ineffective for failing to request a statement for the bases for imposing consecutive sentences, the Court of Appeal stated:

> Defendant's appellate counsel contends trial counsel was ineffective because counsel did not ask for a statement of reasons for the imposition of consecutive sentences. We disagree, because the trial court explained its reasoning in detail on the record, and in any event defendant makes no persuasive claim of prejudice.
>
> At sentencing, the trial court emphasized the harm to the victim, noting some facts not apparent from the transcript, namely, that the victim had used a comfort dog while testifying, was visibly shaken, and had to leave the courtroom several times with the comfort dog and her support persons to "get the courage back" to continue testifying. Although the victim had helped defendant in the past by allowing him to shower at her apartment, she hid in a closet on this occasion. He was very drunk and had brought lubricant and asked for a "threesome," evidencing his lewd intent upon arrival. Between the digital penetration and intercourse, defendant had to turn the victim around "giving him an opportunity to reflect upon what he had done."
>
> Because defendant knew the victim was vulnerable because of her mental capacity, and because he was on post-release community supervision (PCRS) at the time, the trial court imposed the upper term for the rape, eight years, doubled to 16 years for the strike, and another eight-year term doubled for the penetration count. The court then noted defendant had numerous prior adult convictions and prison terms, and his past performance on probation, PCRS, and parole had been poor, justifying the upper terms, doubled for the strike, resulting in a total base term of 32 years. Added to that was five years for the prior serious felony allegation, and four years for four of the remaining five prior prison terms,

1    for a total of 41 years. The trial court struck the other prison term
     enhancement.

2            Later, the trial court referenced its agreement with the probation
     report's recommendation, and stated: "There was a clear break between

3    Count II and Count I" and "[t]here are two separate acts. Victim is
     struggling, trying to keep her pants up, before Defendant rapes her. That's

4    why I believe it's appropriate. As we have discretionary sentencing on
     forcible sex crimes in this matter, I'm imposing them fully and

5    consecutively."
             As the People correctly concede, under section 667.6, subdivision

6    (c), a trial court has discretion whether to impose full consecutive terms
     for certain sex offenses when the crimes "involve the same victim on the

7    same occasion." (See *People v. Belmontes* (1983) 34 Cal.3d 335, 347.)
     Under section 667.6, subdivision (d), however, the trial court *must* impose

8    full consecutive terms for certain sex offenses when the crimes "involve
     the same victim on separate occasions." (See *People v. Jones* (2001) 25

9    Cal.4th 98, 104.) In determining whether the offenses occurred on
     "separate occasions," the trial court "shall consider whether, between the

10   commission of one sex crime and another, the defendant has a reasonable
     opportunity to reflect upon his or her actions and nevertheless resumed

11   sexually assaultive behavior. Neither duration of time between crimes, nor
     whether or not the defendant lost or abandoned his or her opportunity to

12   attack, shall be, in and of itself, determinative on the issue of whether the
     crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

13           The trial court's comments, read in context, show that it was aware
     of the need to make this decision and found based on the evidence that

14   defendant had an opportunity to reflect but resumed his sexually assaultive
     behavior. That finding is supported by the victim's testimony, as

15   recounted above. Once that finding was made, full consecutive sentences
     were required by section 667.6, subdivision (d).

16           Further, the aggravating facts described *ante* far outnumbered the
     (zero) facts found in mitigation. There was no basis in the record for

17   lenience. Accordingly, it is not reasonably probable the trial court would
     have imposed any lesser sentence, based on the record and the trial court's

18   comments, even if further reasons should have been stated on the record at
     the time of sentencing in this case. (See *People v. Champion* (1995) 9

19   Cal.4th 879, 934.)

20   ECF No. 11-2, pgs. 9-11.

21           Petitioner's claim presumes that the trial court could have imposed concurrent

22   sentences and that the trial court failed to explain its reasons for imposing consecutive sentences.

23   Neither is true.  As the Court of Appeal noted, the trial court explained its sentencing decision in

24   detail, including the basis for consecutive sentences.  Specifically, the trial court found that the

25   crimes were committed on separate occasions because Petitioner had time to reflect but resumed

26   his criminal behavior towards the victim.  This finding required imposition of consecutive

27   sentences under California law.  Because imposition of consecutive sentences was mandatory,

28   and because the trial court made the findings necessary to impose mandatory consecutive

1  sentences, Petitioner's ineffective assistance of counsel claim necessarily fails.  The state court's

2  determination is neither contrary to nor based on an unreasonable application of <u>Strickland</u>

3  because trial counsel could not have rendered deficient performance in failing to request an

4  explanation for consecutive sentences where an explanation was provided and imposition of

5  consecutive sentences was mandatory under state law.

6

7                        **IV.  CONCLUSION**

8          Based on the foregoing, the undersigned recommends that Petitioner's petition for

9  a writ of habeas corpus, ECF No. 1, be denied.

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

12  after being served with these findings and recommendations, any party may file written objections

13  with the court.  Responses to objections shall be filed within 14 days after service of objections.

14  Failure to file objections within the specified time may waive the right to appeal.  <u>See</u> <u>Martinez v.</u>

15  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16

17  Dated:  February 18, 2021

18                                    DENNIS M. COTA

19                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28